STEVENS, APPELLANT, *v.* TRAFTON, RESPONDENT.

(No. 2,501.)

(Submitted February 6, 1908. Decided February 13, 1908.)

[93 Pac. 810.]

*Specific   Performance — Judicial   Discretion — Nonsuit — Evidence—Equity   Cases—Appeal—Practice.*

Specific Performance—Nonsuit—Judicial Discretion.

    1.  The discretion with which the district court is vested in determining whether or not a contract should be specifically enforced is a sound legal one; therefore, where the testimony of plaintiff in such a suit furnished no ground for different conclusions, but showed that plaintiff was entitled to the relief asked, no grounds for the exercise of judicial discretion existed, and the motion of defendant for a "nonsuit" should have been overruled.

Equity Cases—"Nonsuit."

    2.  In equitable proceedings there can be, strictly speaking, no such thing as a motion for a nonsuit.

Nonsuit—Effect in Law Actions—Appeal.

    3.  The effect of granting a nonsuit in an action at law is to declare that the evidence is insufficient to warrant a verdict for plaintiff under any circumstances; hence the judgment should be reversed on appeal, if there was any evidence justifying a verdict for plaintiff.

Same—Equity Cases—Discretion—Appeal.

4.  In an action for specific performance of a contract, if plaintiff is not entitled to relief as of right, then upon a motion for nonsuit at the close of plaintiff's testimony it is the trial court's duty to adjudicate the issues between the parties, and the court may exercise a legal discretion in giving or withholding relief; hence the effect of nonsuit would not be to determine that plaintiff was not entitled to relief in any view of the evidence, but that the court, in the exercise of its discretion, withheld relief in that particular case, and its action will not be disturbed on appeal unless there was an abuse of discretion.

Specific Performance—Oral Agreement—Performance.

5.  Where it appeared from plaintiff's evidence in a suit to enforce specific performance of an oral contract to sell real property, that he had fully performed all the terms of the agreement to be performed by him, and that defendant had put him in actual possession of the premises upon which he had erected substantial improvements, the court had the power, under section 2342 of the Civil Code, to grant the relief asked for.

Same—Evidence—Review—Nonsuit.

6.  Evidence of plaintiff in a suit to enforce the specific performance of an oral agreement for the sale of a lot, reviewed, and *held* sufficient to entitle plaintiff to a decree, and that the court erred in granting a "nonsuit."

Same—Nonsuit.

7.  The fact that plaintiff in the suit referred to in the foregoing paragraph produced two receipts, which by their recitals, "balance in six months" and "part payment on lot," injected the only element of uncertainty into plaintiff's case, did not warrant a court of equity in disregarding his positive testimony as to his full performance of the agreement and granting a "nonsuit," especially in view of the failure of counsel to ask plaintiff for an explanation in this regard.

Same.

8.  The court in passing upon the motion for "nonsuit" in the above case should have taken into consideration defendant's general denial which gave it no intimation of the nature of the defense relied upon, and which may have had concealed within it either a valid defense or an absolutely unconscionable one, and should, in view of plaintiff's positive testimony that he had fully performed his part of the agreement, have denied the motion.

Equity Cases—Appeal—Final Disposition—Practice.

9.  Since the evident purpose of the Act of 1903 (Laws 1903, 2d Extra. Session, p. 7), requiring the supreme court to determine all questions of fact as well as of law in equity cases, unless for good cause a new trial or the taking of further testimony be ordered, is to expedite the entry of final judgment in such cases, and thus put an end to litigation, it is the duty of the parties to introduce all their testimony in the trial court, in order to enable the appellate tribunal to carry out the intention of the Act.

Same.

10.  On appeal in equity cases, defendant's motion for judgment at the conclusion of plaintiff's case will be construed as a declaration that, in case his motion is granted, he elects to stand upon the case made by plaintiff, and final judgment on appeal will be entered accordingly, and new trials in such cases will not be ordered except for good cause shown in the record.

*Appeal from District Court, Valley County; John W. Tattan, Judge.*

A'CTION by C. H. Stevens against R. M. Trafton for specific performance of an oral agreement to convey land. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*Mr. T. E. Crutcher,* for Appellant.

Courts of equity have always claimed and exercised the right to enforce specific performance of contracts of this class, where they have been wholly or partially performed by the party seeking relief. (3 Pomeroy's Equity Jurisprudence, 1409.) This doctrine is distinctly recognized by our Code (Civ. Code, sec. 2342) and by this court. (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007.)

A writing acknowledging the payment of a certain sum of money as part payment for the purchase price of land described therein, and reciting that the person from whom it is received shall have a designated time within which to pay a further specified sum which shall constitute the balance of the purchase price, is a contract to convey. (*Ellis* v. *Bryant,* 120 Ga. 890, 48 S. E. 352.)

"Where the signature of a party is made by another, at the party's request and in his presence, the authority to make such signature need not be given in writing, for the act of signing is the act of the party and not of an agent." (8 Am. & Eng. Ency. of Law, 1st ed., p. 665, citing *Irvin* v. *Thompson,* 4 Bibb. (Ky.) 295; *Frost* v. *Deering,* 21 Me. 156; *Gardner* v. *Gardner,* 5 Cush. (Mass.) 483, 52 Am. Dec. 740; *Mutual Benefit Life Ins. Co.* v. *Brown,* 30 N. J. Eq. 193; *Pierce* v. *Hakes,* 23 Pa. St. 242.)

*Messrs. Hurd & Lewis,* for Respondent.

Whether specific performance of a contract to purchase land will be compelled in the particular case depends upon the circumstances, and the relief will be granted or withheld in the

discretion of the court. (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Sturgis* v. *Galindo,* 59 Cal. 28, 43 Am. Rep. 239; *Reid* v. *Mix,* 63 Kan. 745, 66 Pac. 1021, 55 L. R. A. 706; 20 Ency. of Pl. & Pr. 390, and cases cited; 26 Am. & Eng. Ency. of Law, 2d ed., 62, and cases cited.) Specific performance of a contract is never demandable as a matter of absolute right. (*Kelly* v. *Central Pac. Ry. Co.,* 74 Cal. 557, 5 Am. St. Rep. 470, 16 Pac. 386; *Ratterman* v. *Campbell,* 26 Ky. Law Rep. 173, 80 S. W. 1155; *Thornburgh* v. *Fish,* 11. Mont. 53, 27 Pac. 381; *Davenport* v. *Latimer,* 53 S. C. 565, 31 S. E. 630; *Mack* v. *McIntosh,* 181 Ill. 633, 54 N. E. 1019; *Boldt* v. *Early,* 33 Ind. App. 434, 104 Am. St. Rep. 255, 70 N. E. 271.) A court of equity will refuse specific performance and turn the party over to his remedy at law, if it appears to the court to be inequitable to grant such relief. (26 Am. & Eng. Ency. of Law, 2d ed., 62, and cases cited; *Rathbone* v. *Groh,* 137 Mich. 373, 100 N. W. 588.)

To authorize a court to exercise equitable jurisdiction compelling the specific performance of a contract, the contract must be reasonably certain as to its subject matter, its stipulations, its purpose and its parties, and the circumstances under which it was made. (*Largey* v. *Leggatt,* 30 Mont. 148, 75 Pac. 950; *Cella* v. *Brown,* 144 Fed. 742; 26 Am. & Eng. Ency. of Law, 2d ed., p. 32, and cases cited; 4 Am. & Eng. Ency. of Law, 2d ed., Supp. 862, note 5 and cases cited.) The terms of the contract must be established by proof clearly, definitely and unequivocally, or specific relief will be refused. (*Cella* v. *Brown, supra; Wharton* v. *Stoughtenburgh,* 35 N. J. Eq. 274.) And where a bill is ambiguous, its averments will be taken most strongly against the complainant. (20 Ency. of Pl. & Pr. 436, and cases cited.) It nowhere appears either from the complaint, answer or the proof, that the respondent was ever at any time in a position specifically to perform the alleged contract. Nor does it appear that the consideration alleged in the complaint was fair, adequate and equitable. Such allegations are necessary. (*Traphagen* v. *Kirk,* 30 Mont. 562, 77 Pac. 58.)

MR. JUSTICE SMITH delivered the opinion of the court.

In the district court of Valley county the plaintiff filed his complaint, wherein he alleged:

"(1) That on the 21st day of July, 1903, he made a certain agreement with defendant whereby defendant agreed to sell, and the plaintiff agreed to buy of defendant, the east half of lot 3 in block 6 of the Trafton addition to Malta, in the county of Valley, state of Montana, for which he agreed to pay defendant the sum of $100, and at the same time plaintiff agreed to buy from defendant certain lumber which he would need for building a house on said lot. By the terms of said agreement plaintiff was to pay defendant $50 cash, $50 in three months, and the balance, whatever it might be, in six months, which included the price of the lumber to be purchased, and when these payments were made defendant agreed to make to plaintiff a warranty deed to said east half of said lot.

"(2) That in pursuance of said agreement plaintiff paid defendant $50 cash on said 21st day of July, 1903, and was placed in possession of said east half of said lot by defendant, and proceeded to and did buy lumber from defendant and erected a house on said east half of said lot. That on the 20th day of October, 1903, he paid defendant the sum of $50 in accordance with the terms of said agreement, and on the 31st day of October, 1904, he paid defendant the sum of $101.78, the balance due under the terms of said agreement, and thus complied fully with his part of the agreement.

"(3) That on the 31st day of October, 1904, plaintiff made a written demand on said defendant to make and execute to him a warranty deed to said east half of said lot, which said deed defendant refused and still refuses to make, execute, and deliver to this plaintiff, notwithstanding plaintiff has performed all his part of said agreement.

"Wherefore he prays judgment that said defendant be decreed and compelled to make, execute, and deliver to this plaintiff in a reasonable time, to be fixed by the court, a warranty

deed to the east half of lot 3 in block 6 of Trafton's addition to Malta, and that this honorable court appoint a commissioner to make such conveyance in default of one being made by defendant in the time fixed by the court, and for his costs herein."

Defendant filed a general demurrer to the complaint, but afterward withdrew the same and filed an answer, wherein he denied each and every allegation thereof.

Plaintiff was the only witness in his own behalf. After testifying to the contract for the sale of the lot, as alleged in his complaint, he continued as follows: "Mr. Trafton paced the lot off, indicating the northeast and northwest corners, scratching in the dirt, and said: 'This is the parcel.' We then went to the bank, and I paid him $50 cash. He called in Mr. Smith from another part of the bank, and said, 'Smith, Stevens has purchased the east half of this lot,' putting his finger down on the plat which he held in his hand. 'Mark it sold. He is to pay $100. The conditions are that he is to pay $50 down, and $50 in three months. You take the money and give him a receipt.' Mr. Trafton then withdrew, and Mr. Smith went into another part of the bank, and came back and gave me a receipt, reading as follows:

" 'Malta, Montana, July 21, 1903.

" 'Received of C. H. Stevens, the sum of fifty dollars ($50.00) being part payment on the east half of lot 3, block 6, of Trafton's addition to Malta, Montana, another fifty dollars ($50.00) to be paid in three months, and the balance in six months, at which time a warranty deed is to be given the said Stevens.

" 'R. M. TRAFTON, per SMITH.'

"I paid the second $50 on October 20, 1903. I have the receipt signed by E. Smith, as follows:

" '$50.00.

"October 20, 1903.

" 'Received of C. H. Smith fifty dollars, part payment on lot.

" 'E. SMITH.'

"I offered to pay the money to Mr. Trafton, but he sent me to Smith. I made this payment to Mr. Smith by direction of Mr. Trafton. Mr. Trafton told me to go and pay Smith. * * * He said to pay it to Smith, which I did, and took a receipt. * * * After having paid everything, I made a demand on Mr. Trafton for a deed in person, and by registered letter. I was at his store, and I told him I wanted a deed to this lot that I had contracted for, the east half of lot 3, block 6. He said: 'You will get your deed when you pay for it.' I said: 'Everything is paid for.' Then he said: 'Who did you pay?' I said, 'I paid Smith.' He said: 'Go to Smith for your deed.' I went to Smith, and he sent me back to Trafton, and then I served written notice, through the postoffice, on Mr. Trafton, demanding a warranty deed for the property. I never received any reply to that written notice. Smith is out of the country, and has been for a long time. I paid for the lot in full according to Mr. Trafton's directions. I put a frame building, 12x18 feet, 10 feet high, on the lot. I have remained in possession ever since I purchased the lot, and I am in possession now. The contract I had with Mr. Trafton was a verbal contract. * * * I have no written agreement concerning this lot. * * * My recollection is clear as to the terms of this oral agreement. * * * As Mr. Trafton went out of the bank he said: 'So far as the lumber is concerned, you can pay that at the bank.' * * * I handed the $50 to Trafton, and he passed it on to Smith. * * * The next conversation I had as to title on payment was on the 20th of October, 1903, when I started from the office which I had built on the lot down to his store to pay him the remaining $50, and I met him on the street and I told him I was going down to pay him the other $50 on my lot. He said: 'I am busy. Go in and pay Smith.' He went on, and I went in and paid it to Smith. * * * Then it ran along until the day I paid my lumber bill, which was the 31st day of October, 1904. The reason why I didn't demand a deed when I paid the $50 in 1903 was because I had a lumber bill for about $90 on that lot, due to Trafton, and I hadn't any

idea that he would give me a deed until I had paid it. I did not ask him at that time, or make any demand. I waited for about a year before I made a demand. I saw Trafton off and on about every day during that time. On the 31st day of October, 1904, I did make a demand on Mr. Trafton, and he told me to go to Smith for the deed. I went to Smith, and I did not get my deed. Mr. Smith simply grinned and said: 'You better go back to Trafton.' I did not go back to Trafton, but wrote out a demand on him and sent it by registered letter. That demand reads as follows:

" 'Malta, Montana, October 31, 1904.

" 'R. M. Trafton, City.

" 'Sir: I hereby demand of you a warranty deed to the east half of lot 3, block 6, Trafton's addition to Malta, as per our agreement of July 21, 1903, and if the same is not delivered within six days from date, I shall begin proceedings against you to recover the same, and such damages as the law allows.

" 'C. H. STEVENS.' "

The record recites that at the conclusion of this testimony "the defendant moved for a nonsuit, upon the ground that, under the proof, no decree for specific performance could be awarded." The district court granted the motion, entered a judgment for the defendant, and plaintiff appeals therefrom.

Appellant contends that the court erred in granting the so-called motion for a nonsuit, for the reason that the testimony tended to prove all the material allegations of the complaint. The respondent, on the other hand, argues that specific performance of a contract is never demandable as a matter of right, but relief should be granted or withheld in the discretion of the trial court, and in this case the court below having withheld relief to plaintiff on his own showing, and the evidence furnishing grounds for different inferences, the finding of the lower court thereon should not be disturbed.

It is well settled that whether or not a contract will be specifically enforced is a matter of judicial discretion. (26 Am. & Eng. Ency. of Law, 2d ed., 62.) But it must be a sound

legal discretion. (*Dewey* v. *Spring Valley Land Co.,* 98 Wis. 83, 73 N. W. 565.) And assuming that the respondent is correct in his conclusion, we think he is wrong in his premises. As we read the testimony, it furnishes no reasonable grounds for different conclusions, and therefore no grounds for the exercise of discretion. Plaintiff testified that the purchase price of the lot was $100, all of which had been paid. Had no written receipts been received in evidence, plaintiff's case would have embodied no uncertainty whatever. The parties, the subject-matter, the terms of and circumstances surrounding the making of the contract were all clearly and definitely stated. According to the evidence given by the plaintiff, the terms of the agreement were not merely partly, but fully performed on his part, and, in addition to that, the defendant had put the plaintiff into actual possession of the premises, upon which he had erected substantial improvements. Under these circumstances the court had the power to decree specific performance of the contract, by virtue of section 2342 of the Civil Code, which reads as follows:

"Sec. 2342. No agreement for the sale of real property, or of any interest therein, is valid unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent, thereunto authorized, in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof." (See, also, *Wolke* v. *Fleming,* 103 Ind. 105, 53 Am. Rep. 495, 2 N. E. 325.)

But it is argued that because the two receipts produced by the plaintiff recite, respectively, "and the balance in six months, at which time a warranty deed is to be given," and "part payment on lot," an element of uncertainty was injected into the case that authorized the court in disregarding the positive oral testimony of the plaintiff. But let us remember that the plaintiff testified that there was also a lumber bill between the parties, that the sale of the lot and agreement to purchase lumber were parts of one transaction, and that defendant had instructed

him to pay the lumber money into the bank, as well as the $50 remaining due on the lot. It is true that plaintiff did not attempt to explain the reason for this phraseology of the receipts, or to account for the employment of the words quoted. Singularly enough, he was not asked to do so by counsel for either party. But we do not think that this fact alone would warrant a court of equity in disregarding his positive testimony as to the terms of the sale. We feel that in equity and in good conscience he was entitled to a decree as prayed for upon the showing made by him.

The general denial made by the defendant gave the court no intimation of the nature of the defense. It is true that defendant was entitled to file such a pleading, but whether it concealed a valid defense or an absolutely unconscionable one the court had no way of knowing. The receipts were written by the defendant's agent. We think the court should have taken these matters into consideration in passing upon defendant's motion, especially in view of the fact that, unless the defendant can be compelled in this action to disclose his version of the agreement, the plaintiff may never be able to perform his part, although there may be but a small sum between them. We cannot say that time was of the essence of this agreement. (Civ. Code, secs. 2223, 2027.)

The difficulty we encounter in this case relates to the disposition we shall make of it upon reversal of the judgment. Strictly speaking, there is, in our present practice, no such thing as a motion for a nonsuit in an equitable proceeding. The effect of granting a nonsuit in an action at law is to declare, on the part of the court, that the evidence is not sufficient in law to warrant the jury in finding, under any circumstances, a verdict for the plaintiff. If it be true that in an action to enforce specific performance of a contract the plaintiff is not entitled to relief as of right, then upon a motion for a nonsuit, such as was interposed in this case, it becomes the duty of the trial court to adjudicate the issues between the parties, and in so doing the court may exercise a legal discretion in giving or withholding

relief. Such being the case, the effect of the nonsuit would not be to determine that the plaintiff was not entitled to relief in any view of the evidence, but that the court in the exercise of its discretion had withheld relief in the particular case. In the one case the action of the trial court would be reversed if there was any evidence justifying a verdict for the plaintiff, and in the other the action of the court would not be disturbed unless there was an abuse of discretion.

The legislature of 1903 (Laws 1903 [2d Extra. Sess.], p. 7) enacted into law the following practice provision:

"The supreme court may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. * * * In equity cases, and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless for good cause, a new trial or the taking of further evidence in the court below be ordered."

The legislature has power by regulations to establish the procedure in civil and criminal cases, so far as such procedure does not amount to a denial of justice, and has power to declare by law what shall be the practice on appeal. (*Jordan* v. *Andrus*, 26 Mont. 37, 91 Am. St. Rep. 396, 66 Pac. 502.) The evident purpose of the legislature in passing the law above quoted was undoubtedly to expedite the entry of final judgment in cases where the parties were not entitled to trial by jury; to put an end to litigation and avoid the necessity of new trials involving expense and the contingencies incident to delay. These regulations seem reasonable and salutary. To the end, therefore, that this court might enter final judgment in these equity causes, it is provided that the court shall, on appeal, determine the same on the merits, unless for good cause a new trial or the taking of further evidence is ordered.

It is the duty of parties to an action in equity to introduce all of their testimony so that this court may carry out the intent of the legislature. If the defendant moves for judgment, at the conclusion of plaintiff's testimony, it will be construed hereafter as a declaration on his part that, if his motion be granted, he elects to stand upon the case presented by the plaintiff. In this case the defendant may perhaps have been misled by the practice heretofore pursued, into thinking that in the event of reversal he would get a new trial as of right. We feel, therefore, that in this particular case, that may be sufficient cause for ordering a new trial. But in future we shall not grant new trials in equity cases, except for good cause appearing in the record.

The judgment of the court below is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.