BOSANATZ, APPELLANT, *v.* OSTRONICH, RESPONDENT.

(No. 4,076.)

(Submitted January 12, 1920.  Decided February 2, 1920.)

[187 Pac. 1009.]

*Trusts — Mines and Mining — Appeal and Error — Evidence— Sufficiency—Findings—Jury Trial.*

Trusts—Findings—Evidence—Sufficiency.
1.  Evidence examined, in an action to have defendant decreed a trustee, for the use and benefit of plaintiff, of one-half of mining property, deed to which had been taken in the name of the brother of defendant, with intent to cheat and defraud plaintiff, and by him transferred to defendant, and *held* sufficient to support the findings of the court in favor of defendant.

Equity—Findings—When Conclusive.
2.  The findings of the district court in equity cases will never be reversed, except where the evidence clearly preponderates against them.

Same—Jury Trial.
3.  In an equity case the trial judge may, but is not bound to, call a jury; where a jury is called, he may disregard their findings and substitute his own.

Trustees—Relationship Nonexistent, When.
    4.   Where defendant promised to lend financial aid to plaintiff should
    the latter find a mine property on which he could secure a lease, and
    pursuant to such agreement plaintiff disclosed to defendant such knowl-
    edge as he had concerning two claims, but neither claim was leased,
    defendant was under no liability to account as trustee to plaintiff for
    a half interest in other claims thereafter purchased by defendant.

*Appeal from District Court, Madison County; Jos. C. Smith, Judge.*

SUIT by George Bosanatz against Mike Ostronich.   Judgment for defendant and plaintiff appeals.   Affirmed.

*Messrs. Maury, Templeman & Davies, Mr. Chas. A. Wallace,* and *Mr. M. M. Duncan,* for Appellant, submitted a brief; *Mr. J. O. Davies* argued the cause orally.

We contend this is an action for the recovery of specific real property under section 6724, Revised Codes.   To determine this question, the sole concern of the court is to determine the main purpose of the action.   This question is not at all determined by the nature of the action or by the relief demanded, and is determined by the allegations of the complaint and the object sought.   The allegations of this complaint is the deraignment of plaintiff's title to the real property, and the object sought is to have this title of this one-half interest in the real property described in the complaint to be adjudged to be in the plaintiff. (*Atkinson* v. *Crow etc. Min. Co.,* 80 Kan. 161, 18 Ann. Cas. 242, 39 L. R. A. (n. s.) 31, 102 Pac. 50, 106 Pac. 1052; *Mogollon Gold & Copper Co.* v. *Stout,* 14 N. M. 245, 91 Pac. 724; *Carlisle Packing Co.* v. *Deming,* 62 Wash. 455, 114 Pac. 172; *Burleigh* v. *Hecht,* 22 S. D. 301, 117 N. W. 367.)   If the plaintiff, as a matter of right, was entitled to a trial by jury, then there can be no question but that the findings of the jury were binding upon the trial court.   (16 Cyc. 426.)

If the court should disagree with us upon this question as to an absolute right to trial by jury, and should hold that the right to trial by jury in this case was merely discretionary with the trial court, nevertheless the action of the trial court in rejecting

the findings of the jury in this case was error. Upon this propo-
sition we desire again to call the court's attention to 16 Cyc.
423. As to when it is error for a trial court to reject the find-
ings of fact of a jury in an equity case where the party is not
entitled as a matter of right to a trial by jury, that is, where the
findings of the jury are merely advisory, we seem to have two
lines of decision—one line of decision, to use the language of
the supreme court in the state of Oregon, speaking of the verdict
of the jury in the case of *Swegle* v. *Wells,* 7 Or. 222: ''And
while not conclusive upon the court, it should not be set aside
unless clearly against the evidence''; the other line of decision
is to the effect that if the evidence is equi-preponderant, or
nearly so, then it is error for the trial court to reject the find-
ings of the jury. (Sec. 8054, Rev. Codes; *Miller* v. *Wills,* 95
Va. 337, 28 S. E. 337; *Peckham* v. *Armstrong,* 20 R. I. 539, 40
Atl. 419; *Morawick* v. *Martineck,* 128 Ky. 155, 107 S. W. 759;
*McDaniel* v. *Marygold,* 2 Iowa, 500, 65 Am. Dec. 786; *Carter* v.
*Jeffries,* 110 Va. 735, 67 S. E. 284; *Walton Brick Co.* v. *Ander-
son etc. Machine Works,* 142 Ky. 274, 134 S. W. 136; *Swegle* v.
*Wells,* 7 Or. 222; *Glenn* v. *Crescent Coal Co.,* 145 Ky. 137, 37
L. R. A. (n. s.) 197, 140 S. W. 43; *Humphrey* v. *Ward,* 74 N. C.
784; *Orgain* v. *Ramsey,* 3 Humph. (Tenn. 580) ; 10 R. C. L. 584.)

As far as this case is concerned, under either rule the action
of the trial court in rejecting the findings of the jury was error.
When the defendant induced the plaintiff to give to him his
(plaintiff's) valuable information; to give to him the fruits of
plaintiff's ten years of prospecting, by ceasing to get others to
back him in acquiring this property; by taking the defendant
to Goodrich gulch in order that the defendant might examine
the property and determine for himself that it was of such value
as to justify him in putting his money into it, then and at that
very moment he became bound by the terms of his own contract,
and is estopped to deny it. Under the terms of the contract,
when he put his money into this property he did so for the bene-
fit of the plaintiff. He became the agent of the plaintiff. He
was the agent of the plaintiff in securing the property. To take

the title in his own name or secure the property for himself was a breach of his contract with the plaintiff. Under these facts, a court of equity is bound to decree that he holds the legal title thereof in trust for the plaintiff. Under this defense of the defendant it would be unconscionable to allow him to retain the ownership or legal title to the Anderson property. The courts of this country have, with great unanimity held, that persons in the position that the defendant placed himself in, by his own mouth at the trial of this case, hold the legal title of the property in trust for the benefit of the party defrauded, for the benefit of the person who would have had title thereto had the agreement been carried out. (*Settembre* v. *Putnam,* 30 Cal. 490; *Moritz* v. *Lavelle,* 77 Cal. 10, 11 Am. St. Rep. 229, 18 Pac. 803.) In the latter case it is said: "In *Settembre* v. *Putnam,* 30 Cal. 490, it was held that where mining partners, under a verbal agreement, claim and develop a lode upon the land of another, and authorize one of their number to buy the claim for the benefit of all, and he procures a deed in his own name, he holds the legal title to the interest of his partners in trust for them." (*Kroll* v. *Coach,* 45 Or. 459, 78 Pac. 397; *Butterfield* v. *Nogales Copper Co.,* 9 Ariz. 212, 80 Pac. 345; *Walker* v. *Bruce,* 44 Colo. 109, 97 Pac. 250; *Crosby* v. *Clark,* 132 Cal. 1, 63 Pac. 1022; *Wright* v. *Smith,* 23 N. J. Eq. 106.)

*Messrs. Rodgers & Gilbert, Mr. Lyman H. Bennett* and *Mr. W. B. Rodgers,* for Respondents, submitted a brief; *Mr. Harry B. Rodgers* and *Mr. H. W. Rodgers,* of Counsel, argued the cause orally.

The universal rule is that wherever a title is sought to be asserted by one party in derogation of the written title standing in the name of another, upon whatever grounds the title is asserted, whether by means of an oral agreement to convey or a resulting or constructive trust, the evidence showing the same must be clear, convincing, unambiguous and, as stated by most of the cases, the same must be proved beyond a reasonable doubt. (*Great Falls W. W. Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 59 Pac. 963; *Lewis* v. *Patton,* 42 Mont. 531, 113 Pac. 745;

*Howland* v. *Blake,* 97 U. S. 624, 24 L. Ed. 1027 [see, also, Rose's U. S. Notes]; *Chambers* v. *Emery,* 13 Utah, 374, 45 Pac. 192; *Satterfield* v. *Malone,* 35 Fed. 445, 1 L. R. A. 35.)

In the following cases, where the evidence was equally balanced, relief was refused: *Luscombe* v. *Peterson,* 173 Mich. 165, 138 N. W. 1057; *Hunter* v. *Field,* 114 Ark. 128, 169 S. W. 814; *La Cotts* v. *La Cotts,* 109 Ark. 335, 159 S. W. 1111; *Pike* v. *Pettus,* 71 Ala. 98; *Stephens* v. *St. Louis Union Trust Co.,* 260 Ill. 364, 103 N. E. 190; *Croup* v. *De Moss et al.,* 78 Wash. 128, 138 Pac. 671; *Crane* v. *Reed,* 172 Mich. 642, 138 N. W. 223.

The statute of frauds is applicable to this case. (See *Ryan* v. *Dunphy,* 4 Mont. 352, 1 Pac. 710; *Ducie* v. *Ford,* 8 Mont. 238, 19 Pac. 414; *Prince* v. *Lamb,* 128 Cal. 120, 60 Pac. 689; *Levy* v. *Brush,* 45 N. Y. 591; *McKinley* v. *Lloyd,* 128 Fed. 519; *Purcell* v. *Miner,* 4 Wall. 513, 18 L. Ed. 435 [see, also, Rose's U. S. Notes].)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The appellant alleged that prior to March 8, 1914, he had become familiar with the value and quantity of ore disclosed in the Elenora lode claim, containing ore of a value in excess of $35,000, of which there was partly blocked out and exposed ore of the value of more than $10,000; that on said date he disclosed his knowledge to respondent, and that they then entered into an oral agreement to go to the claim, make an examination, and, if desirable, make an effort to purchase the claim, the respondent to advance $1,000 or so much thereof as should be necessary to make the first payment; that they would then operate the property, repay respondent, and complete the payments on the mine out of the proceeds from ore shipped; that on April 27, 1914, they did visit and examine the mine, under their agreement, and thereafter purchased the same, with the Blondie Britannica and Minnie Montreal claims, for the sum of $4,500; that under the agreement appellant was to have charge of the mining operations, while respondent was to look after the outside affairs; that

appellant performed his part of the agreement until October, 1914, when he became sick; that ore of the value of more than $35,000 was extracted and shipped, and the purchase price fully paid from the proceeds, but that the deed was taken in the name of Joseph Ostronich, a brother of the respondent, secretly, with the intent to cheat and defraud appellant; and that Ostronich has since transferred the property to respondent. The prayer for relief is that respondent be adjudged to hold the one-half interest therein in trust for appellant, an accounting required, and the respondent directed to convey the one-half interest to appellant. The allegations being denied, the cause was tried to the court sitting with a jury. The jury found in favor of appellant, but the judge rejected the findings of the jury, and made general and special findings in favor of respondent, and entered judgment thereon. This appeal is from the judgment.

1. The first contention of appellant is that the findings of the [1] court are not supported by the evidence, and are contrary to the decided weight and preponderance thereof. The testimony of appellant in his own behalf is ample, if uncontradicted, to prove all the allegations of his complaint; he was substantially corroborated by his brother, Mike Bosanatz, and, in some particulars, by two or three other witnesses. There are, however, a number of contradictory statements in his testimony. Two witnesses offered for the purpose of impeachment testified to statements made at other times contradictory of his testimony on the stand. In addition, Andrew Anderson, the grantor of the Elenora and joint grantor of the other claims mentioned, testified that at the time appellant claimed to have been familiar with the property the claim had not been discovered, no vein disclosed, and, at best, there was known to be upon it float and small holes and cuts, made by him in an effort to locate the vein from which the float came. Anderson further testified that the conversation related by appellant was held in the summer-time, before he discovered the Elenora, and referred only to the two other claims.

Bosanatz, having testified that he and Ostronich went to Good-rich gulch for the purpose of examining the Elenora or the Anderson property; that when they arrived, they went directly to the Elenora, examined it, took samples, and attempted to buy the property. Anderson testified that when the two men came to his place they had dinner, and proceeded to the Carolina, a claim owned by Senator Hoffman, of Bozeman, and did not go to the Elenora until the next day, and then only when he invited them, they being about to depart, to take a look at his property; that Ostronich asked if he could take samples, and was given permission, and, on being told that he (Anderson) could not do anything with the property at present on account of an attempt to jump the claim, said that he would return later; and that Ostronich did return on two subsequent occasions, finally purchasing the property.

Ostronich flatly contradicts all of the testimony of appellant concerning any agreement as to the Elenora, or any conversation on the subject, but states that, having on several occasions told appellant that if appellant could secure a lease where he could make anything, he (Ostronich) would help him financially, at least to the extent of $1,000. Respondent further testified that appellant told him of the Carolina and of the Argenta claims, in the vicinity of the Elenora; that he wrote, in appellant's name, to Senator Hoffman concerning a lease and, being informed that the owners might operate the claim, but, if they did not, they would advise him further, appellant and respondent went to inspect the two claims, lying about twenty miles from where they were working. On reaching the Argenta they found men working on it, and appellant said that, as the claim was being operated, it would be useless to try for a lease on it; that they examined the Carolina, and he advised appellant that it was pretty well worked out, but that there was one showing where a man might, by hard work, make wages. Returning to Anderson's cabin they spent the night, and the occurrences of the next day were as Anderson had stated them.

The testimony as to appellant's management of the mine was conflicting and unsatisfactory. The evidence disclosed the fact that appellant was singularly uninterested and did not seek information as to the terms of the lease and bond, the expenses of operation, the returns from the shipment of ore or the reason why the title was taken in the name of Joseph Ostronich, when he discovered the fact. He accepted small payments, approximately amounting to the wages he earned, and which respondent testified were in payment of his wages, but which appellant contends were his portion of net proceeds, without inquiry as to what the proceeds of the mine were.

There is a sharp conflict in the testimony. The evidence would seem to be sufficient to support either party's contention, considering merely the cold record; but the trial judge had the advantage of seeing the witnesses on the stand and noting their demeanor while testifying, and their appearance on the stand.

Where the evidence is conflicting in an equity case, the findings [2] of fact by the trial judge rest upon the same principle as the verdict of a jury. (*Ingalls* v. *Austin,* 8 Mont. 333, 20 Pac. 637.) This court has held repeatedly that, where there is a substantial conflict in the evidence, the supreme court on appeal will not disturb the verdict of the jury on the ground of alleged insufficiency of the evidence. (*Murphy* v. *Cooper,* 41 Mont. 72, 108 Pac. 576; *Previsich* v. *Butte Electric Ry. Co.,* 47 Mont. 170, 131 Pac. 25.)

Indeed, we may go much further than this, and declare that the findings of the district court in equity cases will never be reversed except where the evidence clearly preponderates against them. This doctrine has been declared by this court in a long line of decisions, from *Story* v. *Black,* 5 Mont. 26, 51 Am. Rep. 37, 1 Pac. 1, the first case reported in the Pacific Reporter system, down to *Boyd* v. *Huffine,* 44 Mont. 306, 120 Pac. 228, and *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136.

2. Appellant contends that the rejection of the jury's findings [3] constitutes error, for the reason that appellant was entitled to a jury trial, and therefore its findings could only be set aside

for such cause as would warrant like action on a verdict, *or* if this position be not tenable, then, under the circumstances, the findings were entitled to great weight, and were not to be lightly disregarded.

This contention is without merit, and has long since been foreclosed by this court. In the case of *Short* v. *Estey*, 33 Mont. 261, 83 Pac. 479, in which the facts were similar and the relief prayed for the same as here, this court said: "The cause of action stated in the complaint is one of purely equitable cognizance. There is no issue presented of such a character as would entitle any of the parties to a trial by jury, according to the usual course of law. The court, then, was not bound to call a jury; and, if it had submitted the case for findings, it would not have been bound by them. In such cases the findings may aid the conscience of the judge, but may not control his judgment. The findings and judgment are his. If, when the jury has made findings, the judge is not satisfied with them, he may disregard them, and so find as to satisfy his own conscience."

In *Wetzstein* v. *Largey*, 27 Mont. 212, 70 Pac. 717, the court held that "Ultimately the findings and decree based thereon must be regarded as emanating from the judge, and the correctness of the result must be determined by a review of the action of the judge, without regard to the findings of the jury. This court has so held in many cases."

3. We find no error in the ruling of the court on the questions set out in specifications Nos. 17 and 18.

4. Appellant propounds the question, "What are the rights of [4] the plaintiff under the defense of the defendant?" to which the answer is: The only property alleged by appellant to have the subject matter of the trip to Goodrich gulch is the Anderson property, the Elenora and companion claims. Had the court found that respondent had agreed, generally, to finance appellant in the operation of any property he might secure, by purchase or lease, and that, in visiting Goodrich gulch respondent was acting by reason of the disclosures made by appellant concerning the Elenora claim, as appellant contends, clearly a fidu-

ciary relation would have resulted. But the evidence tended to show, and the court found, that the visit was not pursuant to any such disclosure; that at the time of the conversation between these two men the Elenora was not discovered, and no vein was disclosed therein. Taking, then, the theory of the defense, to discover, what right, if any, appellant had thereunder, we find that respondent had promised to lend financial aid to appellant, if necessary, should he find a property on which he could secure a lease; that pursuant to such agreement appellant disclosed to respondent such knowledge as he had concerning the Carolina claim and the Argenta claim in the vicinity of the Anderson property; that these two claims were the subject matter of the visit to Goodrich gulch; but on visiting the claims appellant himself found that the Argenta was being operated and consequently could not be leased and was advised by respondent that on the Carolina a man could only make wages by hard work and the project of leasing that claim was abandoned. Having gone as far as appellant desired regarding the only claims suggested by appellant, respondent was released from responsibility, at least until appellant should suggest some other claim.

The subject matter of the contract being disposed of, appellant had no right "under the defense." This also disposes of the discussion concerning "part performance" under the contract, if any, disclosed in the defense.

The judgment of the district court of Madison county is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.

ON MOTION FOR REHEARING.

(Decided February 28, 1920.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

1. Appellant's petition for rehearing urges that the court applies an obsolete rule for the determination of equity cases, quoting a portion of the rule laid down by the court, which appellant admits was the rule in the jurisdiction prior to the enactment of section 6253, Revised Codes, but contending that a different rule applies since the enactment of that section, and that it has been so declared in the following cases: *Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810; *In re Colbert's Estate,* 51 Mont. 455, 153 Pac. 1022; *Barnard Realty Co.* v. *City of Butte,* 55 Mont. 384, 177 Pac. 402; and *Lowry* v. *Carrier,* 55 Mont. 392, 177 Pac. 756. The authorities cited deal with an entirely different phase of the consideration of equity cases, and do not relate to the rule laid down in the line of authorities cited in the opinion.

It is true that in equity cases, since the enactment of the section referred to, the court must review the questions of fact as well as those of law, and determine the case on its merits, to the end that equity cases might be thus finally disposed of on their merits, without the necessity of successive trials on the same state of facts. As was said by this court in *Stevens* v. *Trafton, supra:* "The evident purpose of the legislature in passing the law above quoted was undoubtedly to expedite the entry of final judgment in cases where the parties were not entitled to trial by jury; to put an end to litigation, and avoid the necessity of new trials involving expense and the contingencies incident to delay. * * * To the end, therefore, that this court might enter final judgment in these equity causes, it is provided that the court shall, on appeal, determine the same on the merits, unless for good cause a new trial or the taking of further evidence is ordered." This rule, however, goes no further than to require that the court shall review the questions of fact as well as those

of law, and dispose of the cause on its merits, and does not affect the rule governing the court in the consideration of the evidence. If, on a review of the questions of fact, it does not appear that the evidence clearly preponderates against the findings of fact by the trial court, the appellate court will not disturb those findings. This is the rule laid down in the opinion in this case, and is supported by all the opinions of this court in equity cases, as stated in the opinion, from *Story* v. *Black,* the first case reported in the Pacific Reporter, down to the present time.

2. While it is true the trial court made no specific finding that the Anderson property was not the subject matter of the contract or agreement between the parties, it so found in effect, and such implied finding is abundantly supported by the evidence. The court carefully considered all of the evidence; and while, as pointed out in the petition for a rehearing, there was evidence in the case to support a contrary view, the trial court had the advantage of seeing the witnesses on the stand and observing their demeanor, and was at liberty to reject the testimony of the one set of witnesses and accept that of the other, and this court will not, under such circumstances, set its opinion of the evidence up as against that of the trial court.

3. It is suggested that it has been the universal custom of appellate courts, in deciding vital questions of fact, to fairly set forth, in the opinion, the substance at least of the evidence. This we feel has been done in this case, in so far as the fact conditions are necessary to an intelligent opinion; no good purpose could be subserved in cumbering the record with the mass of testimony set out in the petition for rehearing, as pertinent in this respect.

The petition is denied.

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.