NOYES ESTATE, RESPONDENT, *v.* GRANITE-ALASKA CO.,
APPELLANT.

(No. 4,863.)

(Submitted September 25, 1922.    Decided October 19, 1922.)

[210 Pac. 96.]

*Equity—Satisfaction of Mortgage—Evidence—Admissibility—*
*Findings—When Conclusive—Appeal and Error.*

Equity—Erroneous Admission of Testimony—Harmless Error.
1.  In an equity case, admission of testimony on the question
whether an instrument expressed the intention of the parties, in-
competent as calling for a conclusion of the witness and there-
fore error, was harmless in view of other evidence amply justify-
ing the finding of the trial court as to their intention.

Same—Findings—Evidence—Sufficiency—Error in Admission of Evi-
dence—Presumptions.
2.  Where the court's findings in an equity case are supported by
evidence admitted without objection, it will be presumed on appeal
that evidence erroneously admitted was not considered by the
court in arriving at its conclusion.

Same—Satisfaction of Mortgage—Release of Indorser from Liability on
Note—Evidence—Admissibility.
3.  In an action to compel satisfaction of a mortgage sought to be
held by the mortgagee as security on a note which it had indorsed,
*held,* that an instrument signed by the makers and payee of the
note purporting to. release it from liability was admissible in evi-
dence.

Same—Findings—When Conclusive.
4.  Findings of the district court in equity cases must be upheld
unless the evidence clearly preponderates against them.

Same—Satisfaction of Mortgage—Right to Return of Additional Se-
curity—Payment of Debt.
5.  Where an assignment of the proceeds of the sale of a mining
claim had been given as security for a debt additional to that
afforded by a mortgage, and the debt has been fully paid, plain-
tiff in its action to compel satisfaction of the mortgage was en-
titled to a surrender of the assignment, to payment of all moneys
paid into a bank by reason of the assignment and to a satisfac-
tion of the mortgage.

Appeal and Error—Briefs—Error not Specified or Argued not Entitled
to Review.
6.  Contention for the first time made on appeal under leave of
court permitting counsel to file additional authorities, that the ac-
tion tried as one to compel satisfaction of a mortgage was in
reality one for damages entitling defendant to a jury trial, a
matter not specified or argued in defendant's original brief, is not
entitled to consideration.

[64 Mont. 406.]

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

Action by the Noyes Estate, a corporation, against the Granite-Alaska Company and the Daly Bank & Trust Company. From a judgment for plaintiff and an order overruling its motion for new trial, the first named defendant appeals. Judgment and order affirmed.

*Mr. James E. Murray* and *Mr. J. F. Emich,* for Appellant, submitted a brief; *Mr. Murray* argued the cause orally.

*Mr. Harry Meyer* and *Mr. E. B. Howell* submitted a brief and argued the cause orally.

MR. COMMISSIONER LEIPER prepared the opinion for the court.

On the twenty-seventh day of June, 1917, the plaintiff, the Noyes Estate, a corporation (respondent herein), gave to the defendant Granite-Alaska Company, a corporation (appellant herein), a certain mortgage as security for the following obligations:

"(1) The promissory note of the mortgagor to the mortgagee in words and figures as follows, to-wit:

" '$25,000.                    Butte, Montana, June 27, 1917.

" 'On demand for value received, we promise to pay to the order of the Granite-Alaska Company twenty-five thousand dollars at Butte, Montana, with interest from date at the rate of 8 per cent. per annum and costs of collection, including a reasonable attorney's fee in case payment be not made at maturity.

" 'The Noyes Estate,

" 'Elmira Noyes Kelsey, President.

" 'Philo C. Hanson, Secretary.'

"(2) Future advances made by the mortgagee to the mortgagor not exceeding the sum of one hundred and fifty thousand dollars, with interest at eight per cent per annum."

The mortgage further provides: "If the mortgagor shall pay to the mortgagee at maturity the said promissory note, principal and interest, when due, and shall also pay to the mortgagee when due such further sums of money, principal and interest, as the mortgagee shall advance to the mortgagor, * * * then this mortgage shall become null and void."

For the purpose of further securing the indebtedness mentioned in the said mortgage the plaintiff, on August 31, 1917, executed and delivered to defendant Daly Bank & Trust Company of Butte an assignment to defendant Granite-Alaska Company by which the said bank was authorized and directed to pay to said defendant Granite-Alaska Company all moneys which might be paid into said bank by the Anaconda Copper Mining Company upon a certain option for the purchase of plaintiff's interest in certain of its property.

This action is commenced for the purpose of compelling the defendant Granite-Alaska Company to satisfy the said mortgage of record, to surrender the said assignment, and to secure judgment against the defendant Granite-Alaska Company for the damages provided by statute for the failure to satisfy of record a mortgage; also for the purpose of procuring a decree requiring the defendant bank to pay over to plaintiff all moneys collected under said assignment. The complaint alleges, in substance, the execution of the note and mortgage hereinbefore mentioned; that such mortgage was duly recorded; the execution of the assignment hereinbefore mentioned; the payment of the said note; the payment of all advances made by defendant Granite-Alaska Company in addition to the said note, together with all interest on all of the same; that all of the conditions of the said mortgage have been fully performed; and that thereafter demand was duly made upon the defendant for the satisfaction of the said mortgage, and for the surrender to plaintiff of said assignment, but that the defendant Granite-Alaska Company has failed, neglected and refused to satisfy or release the said mortgage or to surrender the said assignment. It is further alleged that the defendant bank is without

authority to either pay any money received by it under said assignment to this plaintiff or to withhold payment thereof from the defendant Granite-Alaska Company. The plaintiff prays judgment in the sum of $100; that the defendant Granite-Alaska Company be required to satisfy of record the said mortgage; that the defendant bank be restrained from paying to the defendant Granite-Alaska Company any money collected by virtue of said assignment; that said assignment be surrendered; and that all moneys now held by said bank, or which may be collected by it during the pendency of this action, by virtue of such assignment, be turned over to plaintiff.

The answer admits the execution of the mortgage, but denies that the conditions of the mortgage have been fully performed. As an affirmative defense, the answer alleges, in substance, that at the time of the execution of the mortgage in question, T. J. Murray was the president of the defendant Granite-Alaska Company, and the sole owner of all of its stock, excepting two shares thereof; that on the twenty-seventh day of June, 1917, the plaintiff was indebted to the Penn Mutual Life Insurance Company in the sum of $150,000, payments on which the plaintiff, at the time of the execution of the said mortgage, was failing to make; that, as evidence of such indebtedness for $150,000, plaintiff had executed its note to the Penn Mutual Life Insurance Company, and that said Murray had joined in the execution thereof, and thereby became liable for the payment of the same, all of which plaintiff and its officers well knew at the time of the execution of the mortgage in question; that the two shares of stock in the Granite-Alaska Company held by persons other than said Murray were so held merely to qualify such other persons as officers of the Granite-Alaska Company. It is further alleged that at the time of the execution of the said mortgage the said Murray had, at the special instance and request of plaintiff, incurred and advanced expenses in connection with the management of the business of plaintiffs, amounting to the sum of $10,000, and that neither

this sum of $10,000 nor the said sum of $150,000 owing to the
Penn Mutual Life Insurance Company have been paid, and
that the said Murray has not been released from his liability
for the payment of the said $150,000. And it is further al-
leged in the said answer:

"Defendant further alleges that it was mutually agreed by
and between the said Noyes Estate, plaintiff herein, and the
defendant Granite-Alaska Company, that the mortgage referred
to in plaintiff's complaint executed on the twenty-seventh day
of June, 1917, should stand as security and was intended as
security to the defendant Granite-Alaska Company, and also
to its officer T. J. Murray, personally, for the payment of the
obligation incurred in the execution of the aforesaid note to
the Penn Mutual Insurance Company, and also that said mort-
gage referred to in plaintiff's complaint should stand as
security for any expenses which might be incurred and ad-
vanced by the said T. J. Murray in connection with the
management and conduct of the business of the plaintiff corpo-
ration, and it was expressly understood and agreed by and be-
tween the parties to said mortgage that the said mortgage
should remain in full force and effect and should not be can-
celed or released until the said T. J. Murray should be repaid
all moneys which might be advanced by him as expenses on
behalf of plaintiff and until the said note executed by the
plaintiff, Noyes Estate, and T. J. Murray, to the Penn Mutual
Insurance as hereinbefore alleged, should be fully paid, satis-
fied, and discharged.

"Defendant further alleges that in the preparation of said
mortgage referred to in plaintiff's complaint one E. B. Howell,
attorney for plaintiff herein, acted as attorney for both par-
ties to said transaction, and this defendant relied upon said
attorney in the preparation of said mortgage to properly set
forth the terms and conditions and true consideration for the
same and to make the same express the full purpose and intent
of said parties, which was that said mortgage should, among
other things, be held by the Granite-Alaska Company to secure

the said T. J. Murray for any expenses incurred or advanced by him in behalf of plaintiff in connection with the management of the plaintiff corporation and also to secure the said T. J. Murray from any liability on account of the note executed by him to the Penn Mutual Insurance Company.

"Defendant further alleges that, at the time of the execution of the said mortgage referred to in plaintiff's complaint, it was expressly understood and agreed that the object of the second clause contained in said mortgage relating to the consideration or security for which said mortgage was given was for the purpose of expressing the agreement of the parties as hereinabove described, to-wit, that the Granite-Alaska Company, defendant herein, should deem said mortgage, among other things, as security for any loans or advances made by it and also on behalf of the said T. J. Murray for any expenses incurred or advanced by him in connection with the management of the plaintiff corporation, and also to secure the said T. J. Murray upon the obligation incurred by him to the Penn Mutual Insurance Company as hereinabove set forth, but in this regard defendant alleges that by reason of mistake and inadvertence in the preparation of said mortgage, and by reason of the imperfect language employed in drafting said mortgage the same does not fully or clearly express the true consideration and purpose of said mortgage; the true purpose and consideration thereof being as hereinabove set forth."

The defendant bank did not answer or otherwise appear herein.

The reply admits plaintiff's indebtedness to the Penn Mutual Insurance Company for $150,000; admits that T. J. Murray signed the note evidencing such indebtedness, but it is alleged that the Penn Mutual Insurance Company, by an instrument in writing, released said Murray from all liability therein; and admits that such Murray, prior to the execution of the mortgage in question, had incurred expense and advanced certain moneys to plaintiff, all for plaintiff's use and benefit. It is alleged, however, that prior to June 27, 1917, said Murray

had assigned to defendant Granite-Alaska Company all of such indebtedness, and that all of the same was included in the said note for $25,000 given to the defendant Granite-Alaska Company, and secured by the said mortgage. There is a general denial of all the other material allegations of the answer.

The cause was tried to the court without a jury. The court made its findings of fact, which are as follows:

"(1) That the mortgage described in the complaint was intended and given for the purpose of securing the indebtedness in said mortgage described and no other. (2) That said indebtedness was fully paid and all the conditions of said mortgage were fully performed by plaintiff on or prior to the twenty-fifth day of January, 1919.. (3) That thereafter, on the —— day of ——, 1919, plaintiff requested the defendant Granite-Alaska Company to execute and acknowledge a certificate of discharge and release of said mortgage, which said certificate of discharge and release the defendant Granite-Alaska Company refused to execute or acknowledge and such refusal continued for a period of more than seven days prior to the commencement of this action. (4) That the plaintiff is entitled to recover from the defendant Granite-Alaska Company the sum of $100, being the penalty provided by section 5755 of the Revised Codes of Montana. (5) That on or about the thirty-first day of August, 1917, the plaintiff assigned to defendant Granite-Alaska Company certain moneys thereafter to be paid into the bank of defendant Daly Bank & Trust Company of Butte by the Anaconda Copper Mining Company upon a certain option for the purchase of plaintiff's interest in the Joseph Joyce lode claim survey No. 1755 in Silver Bow county, and that since the commencement of this action the sum of $14,981 has been paid into said bank on said option, and that said moneys belong to plaintiff, and the defendants have no right or claim thereto of any kind. (6) That plaintiff is entitled to have and receive the discharge and release of the mortgage described in the complaint executed and acknowledged by defendant, Granite-Alaska Company. * * * (8)

[64 Mont. 406.]
That all and singular the allegations of plaintiff's complaint are true.''

Conclusions of law were drawn from the facts so found. Judgment was rendered thereon. Thereafter defendant moved the court for a new trial, which motion was overruled. These appeals are from the judgment and order overruling defendant's motion for a new trial.

Eleven specifications of error are set forth in defendant's brief. Specifications 1 to 4, inclusive, relate to alleged errors in the admission of testimony. Specifications 5 to 10, inclusive, have to do with the sufficiency of the evidence to support the findings and the judgment; and the eleventh specification relates to the action of the trial court in denying defendant's motion for a new trial.

Under the first specification, error is predicated upon the [1] ruling of the trial court in overruling objection to the following question: ''And did the mortgage at the time you signed it express the true intention of the parties?'' This was objected to as calling for a conclusion of the witness. The objection was overruled, and the witness answered: ''Yes; as I viewed it; it did.'' Defendant moved to strike this answer, which motion was overruled. Specification No. 2 is based upon this ruling of the court. That the question is open to the objection made is obvious, but there is other competent testimony given by this witness as well as by other witnesses, consideration of which impels us to the same conclusion. A part of this testimony is as follows: ''Q. As a matter of fact, originally Dr. Murray wanted a trust deed, did he not? A. Yes, sir. Q. And was it a trust deed or a straight deed? A. Well, he first asked for a straight deed, and then he wanted a trust deed, to the Daly Bank & Trust Company, to act as trustees. Q. After Mr. Howell refused to be a party to that and threatened to resign as a director, the mortgage was agreed upon, was it not? A. Yes, sir. Q. Now, then, Mr. Hanson, in all the negotiations preliminary to the execution of this mortgage, wasn't the only thing that was considered the amount due at that

time to the Granite-Alaska Company, and any future advances which might be made by the Granite-Alaska Company? A. Yes, sir. Q. And, as a matter of fact, in any of these negotiations was it ever said that the mortgage would protect Dr. Murray? A. No, sir. Murray made the advances, but after the mortgage was signed, why, we ran everything the Granite-Alaska Company. Q. Yes; that was at his request, was it not? A. Yes, sir. Q. And at the time that this mortgage was executed, during all of these preliminary negotiations, was there ever any mention made of the mortgage protecting anybody other than the Granite-Alaska Company for money advanced by it and to be advanced in the future? A. No, sir."

Witness Howell testified in part as follows: "Now, at the time this mortgage was given there was no thought whatever as to our owing Dr. Murray anything on account of expenses. We didn't repudiate the debt; it had never been presented as a claim, but there was absolutely no thought whatever; it wasn't taken into consideration at all. The Noyes Estate—Dr. Murray—had gone on this note of the Penn Mutual Life Insurance Company as surety, and after the Noyes Estate was organized, I mean after the Granite-Alaska Company was formed, there were payments made upon that note, that wasn't paid by the Noyes Estate, was paid by the Granite-Alaska Company. Now, prior to the giving of this mortgage the Granite-Alaska Company—Dr. Murray—had requested of me repeatedly that he should have a mortgage on all the property of the Noyes Estate, to secure his liability on the Penn Mutual note, personally, that is; and I said to him as repeatedly as he made the suggestion to me that he didn't need it; that if he, as surety, had to pay that note that he would be subrogated to the rights of the Penn Mutual Insurance Company, and could enforce the mortgage for any sums that he had paid, and for that reason he didn't need any. I don't think he understood what I meant by subrogation, because he would bring it up again and again; and when this mortgage was

given it covered all of the property of the Noyes Estate, and in order to—we didn't hold a stockholders' meeting, but we did sign a consent, a written consent to the giving of this precise mortgage, to the Granite-Alaska Company, among all of the directors, among all of the stockholders. Dr. Murray signed that, and every stockholder of the company signed it, and it provided for a mortgage to the Granite-Alaska Company and to nobody else, and there was no thought of giving it to anybody else, or any discussion about giving it to anybody else. And after we had received back this consent there was a meeting of the directors held in pursuance of it, and a resolution adopted. Dr. Murray was present at that meeting and voted for the resolution. The resolution was to the effect that this mortgage should be given to the Granite-Alaska Company, and there was no thought or discussion whatever that it was to be given to anyone else. There was no mistake about drawing this mortgage; the mortgage was drawn in accordance with the authority that I had as attorney for the Noyes Estate; I could not go beyond that."

There is other competent evidence which sustained the [2] findings of the trial court as to the intention of the parties to the mortgage, and, when such is the fact, this court has announced the rule to be that, where the evidence, admitted without objection, was sufficient to sustain the court's findings, it will be presumed on appeal that evidence erroneously admitted was not considered by the court in arriving at its conclusion. (*Finlen* v. *Heinze*, 28 Mont. 548, 73 Pac. 123; *Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25; *Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071; *Rumping* v. *Rumping*, 41 Mont. 33, 108 Pac. 10; *Sanford* v. *Gates*, 21 Mont. 277, 53 Pac. 749.)

What has been said relating to specifications Nos. 1 and 2 [3] is likewise applicable to and disposes of specification No. 4. Contention is made by specification No. 4 that the trial court erred in the admission of Plaintiff's Exhibit "C" in evidence. Exhibit "C" is an instrument in writing, signed by the plaintiff, by its president and secretary, and also by the

Penn Mutual Life Insurance Company and Elmira Noyes Kelsey and Benjamin C. Kelsey, and purports to release T. J. Murray from all liability in the aforesaid note for $150,000. We are of opinion that the exhibit was properly admitted.

In our consideration of specifications 5 to 10, inclusive, we [4] must keep before us the fact that it is the rule in this jurisdiction that the findings of the district court in equity cases must be upheld unless the evidence clearly preponderates against them. (*Bosanatz* v. *Ostronich*, 57 Mont. 197, 187 Pac. 1009; *Boyd* v. *Huffine*, 44 Mont. 306, 120 Pac. 228; *Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Pope* v. *Alexander*, 36 Mont. 82, 92 Pac. 203, 565.)

The evidence discloses that T. J. Murray owns all of the [5] stock in the Granite-Alaska Company, excepting two shares, and that these two shares were delivered over to other persons so that they might qualify as officers of this corporation; and contention is therefore made that defendant Granite-Alaska Company and Murray are one and the same. The defendant Granite-Alaska Company contends that the mortgage, as it now stands, was intended to cover all amounts owing by plaintiff to T. J. Murray, as well as to defendant Granite-Alaska Company, and also to secure Murray against any loss by reason of his liability on the loan of plaintiff from the Penn Mutual Life Insurance Company, and that through inadvertence the terms of the mortgage were not made broad enough to cover all that it was the purpose of the mortgagor and mortgagee to have included therein. It clearly appears that for some time prior to the execution of the mortgage in question Murray had been attempting to secure a deed to the property of the plaintiff in order to secure plaintiff's indebtedness to him, and also to secure him against loss by reason of his having joined in the execution of the $150,000 note. This the plaintiff had refused to do. It appears quite clearly that all of these matters were thoroughly discussed prior to the execution of the mortgage in question. It also clearly appears that the execution of the mortgage was not

accomplished hastily, but rather was the result of deliberation and care on the part of all parties concerned. A meeting of the stockholders was not had for the purpose of securing an authorization for the execution of the mortgage, but, in lieu thereof, the written consent of all the stockholders was obtained. T. J. Murray was one of the stockholders and signed such written consent. The resolution later passed by the directors of plaintiff followed the terms of such written consent. The resolution is as follows:

"Whereas, the stockholders of the Noyes Estate have in writing unanimously authorized the board of directors to give security upon all the real property of the Noyes Estate to the Granite-Alaska Company for the purpose of securing present indebtedness of the Noyes Estate to said Granite-Alaska Company as well as future advances of the latter company to the Noyes Estate:

"Now, therefore, be it resolved: That the president and secretary of the Noyes Estate be, and they hereby are, authorized to execute and deliver to the Granite-Alaska Company a note for $25,000.00 for present indebtedness secured by a mortgage upon all the real property of said the Noyes Estate, said mortgage to be also conditioned to secure future advances of said Granite-Alaska Company to the Noyes Estate not exceeding in all the sum of $150,000.00."

The minutes of the meeting at which this resolution was passed disclose that T. J. Murray, P. C. Hanson, E. B. Howell and Elmira Noyes Kelsey were present and voted in favor of the resolution. The mortgage is drawn in strict conformity with the resolution. The terms of this resolution are clear, concise, understandable, and subject to but one interpretation. By virtue of its terms the officers of plaintiff were authorized to execute to defendant Granite-Alaska Company a mortgage to secure: (a) Present indebtedness of plaintiff to Granite-Alaska Company; and (b) future advances of the latter made to the former. A review of the testimony of witnesses Hanson, Howell and Mrs. Noyes impels us to the conclusion that the evidence does not preponderate against finding No. 1 of

the trial court, but rather that the evidence justifies such finding.

The testimony of witnesses Hanson and Howell tends to prove that the note for $25,000, together with all advances made by Granite-Alaska Company, after the execution of the mortgage, and all interest thereon, had been fully paid, and therefore finding No. 2 of the trial court has ample support in the evidence.

Section 5755 of the Revised Codes of 1907 provides in part as follows: "Any mortgagee or his personal representative or assignee, as the case may be, after the full performance of the conditions of the mortgage, whether before or after a breach thereof, who shall, for the space of seven days after being requested, refuse or neglect to execute and acknowledge a certificate of discharge or release thereof, shall be liable to the mortgagor, his heirs or assigns, in the sum of one hundred ($100) dollars."

The evidence discloses that subsequent to the performance of all of the conditions of the mortgage demand was made that defendant Granite-Alaska Company satisfy of record the said mortgage, that the mortgage remains unsatisfied of record, and that more than seven days elapsed from the time such demand was made until the time of the commencement of this action. The assignment hereinbefore mentioned was given as additional security to that of the mortgage in question, but to secure the same indebtedness as that secured by the mortgage. The indebtedness having been fully paid, the plaintiff is entitled to have a surrender of the assignment, and also is entitled to have all moneys paid into defendant bank by reason of such assignment paid over to it, and also to have the mortgage satisfied of record.

Findings numbered 3, 4, 5 and 6 are warranted by the evidence. The evidence in many particulars is conflicting; we have set out only a very small portion thereof herein. A recapitulation of all of the evidence would, in our opinion, serve no useful purpose. After a careful review of all of the evidence, the briefs, and oral argument of counsel, this court

[64 Mont. 406.]
cannot say that the evidence preponderates against the findings of the trial court.

The conclusions of law and the judgment are in accordance [6] with the findings of fact and are warranted thereby. Contention is raised by defendant that this is an action for damages, and that the defendant was entitled to a trial by jury. This, however, is not specified as error in defendant's brief; neither is there any argument made in the defendant's brief thereon. At the time of the oral argument of this case in this court, counsel for defendant asked for and were granted leave to file additional authorities, and in the memorandum of these authorities this contention is for the first time raised in this court. The matter is not, therefore, properly before this court.

No error affecting the substantial rights of the defendant Granite-Alaska Company having occurred during the trial, the trial court properly overruled the defendant's motion for a new trial.

We recommend that the judgment and order overruling defendant's motion for a new trial be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*